**MEMORANDUM DECISION**

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Jun 29 2016, 9:20 am
**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cathy M. Brownson
Coots, Henke, & Wheeler, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of D.G., J.G., and H.G. (Minor Children) and Je.G. (Mother);

Je.G. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

June 29, 2016

Court of Appeals Case No.
29A02-1512-JT-2202

Appeal from the Hamilton Circuit Court

The Honorable Paul Felix, Judge
The Honorable Todd Ruetz, Magistrate

Trial Court Cause No.
29C01-1504-JT-605
29C01-1504-JT-603
29C01-1504-JT-606

**May, Judge.**

[1] Je.G. ("Mother")[1] appeals the involuntary termination of her parental rights to H.G., D.G., and J.G. (collectively, "Children"). She argues the Department of Child Services ("DCS") did not present sufficient evidence the conditions under which Children were removed from her care would not be remedied and termination of her parental rights was in the best interests of Children. We affirm.

# Facts and Procedural History

[2] Mother gave birth to H.G. on July 13, 2011, and to twins D.G. and J.G. on October 30, 2013. At birth, D.G. and J.G. tested positive for Hydrocodone,[2] THC, and methamphetamine. Based thereon, Mother agreed to an Informal Adjustment ("IA") with DCS, which offered her services including homebased case management, homebased therapy, drug and alcohol assessment and treatment, and random drug screens. Mother was not required to complete drug and alcohol treatment unless she tested positive for illegal substances. Mother tested positive for illegal substances multiple times during the IA but did not complete drug and alcohol treatment. She was incarcerated for unrelated charges on February 24, 2014.

---

[1] Children's respective fathers consented to adoption and do not participate in this appeal.

[2] Mother had a valid prescription for Hydrocodone.

On March 27, 2014, Mother tested positive for cocaine. On April 4, 2014, DCS alleged Children were Child(ren) in Need of Services ("CHINS") and on April 7, the trial court authorized DCS to remove Children from Mother's care because Mother violated the terms of the IA. On September 3, 2014, the trial court adjudicated Children as CHINS based on Mother's drug use and lack of participation in services offered as part of the IA.

On December 1, 2014, the trial court ordered Mother to complete a substance abuse assessment and follow all recommendations, complete a psychological assessment and follow all recommendations, complete a parenting assessment and follow all recommendations, visit regularly with Children, and submit to random drug and alcohol screenings. Mother was not compliant and on May 4, 2015, the trial court changed Children's permanency plan from reunification to adoption.

On June 4, 2015, DCS filed petitions to terminate Mother's parental rights to Children. On October 15, 2015, the trial court held a fact-finding hearing on the termination petitions. On November 17, 2015, the trial court issued orders terminating Mother's parental rights to Children.

# Discussion and Decision

We review termination of parental rights with great deference. *In re K.S., D.S., & B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind.

Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id*. In deference to the juvenile court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

[7]    When, as here, a judgment contains findings of fact and conclusions thereon, we apply a two-tiered review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and second whether the findings support the judgment. *Id*. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[8]    "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the children, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own children should not be terminated solely because there is a better home available for the children, *id*., but parental rights may be terminated when a parent is unable or unwilling to meet her parental responsibilities. *Id*. at 836.

To terminate a parent-child relationship, the State must allege and prove:

>   (B) that one (1) of the following is true:

>>        (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

>>        (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

>>        (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

>   (C) that termination is in the best interests of the child; and

>   (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

Mother challenges the court's conclusions that the conditions under which Children were removed would not be remedied, the continuation of the parent-

child relationship posed a risk to Children, and termination was in the best interests of Children.[3]

### *Reasonable Probability Conditions Would Not Be Remedied*

[12] The trial court must judge a parent's fitness to care for her children at the time of the termination hearing. *In re A.B.*, 924 N.E.2d 666, 670 (Ind. Ct. App. 2010). Evidence of a parent's pattern of unwillingness or lack of commitment to address parenting issues and to cooperate with services "demonstrates the requisite reasonable probability" that the conditions will not change. *Lang v. Starke County OFC*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007).

[13] Children were removed from Mother's home because Mother repeatedly tested positive for drugs. The trial court found:[4]

> 4. On or about October 30, 2015, [D.G. and J.G. were] born with a controlled substance in [their bodies]. As a result, Mother entered into a program of Informal Adjustment [IA] with the DCS on November 26, 2013.

---

[3] The trial court found the conditions under which Children were removed would not be remedied and the continuation of the parent-child relationship posed a threat to Children. DCS does not have to prove both. The statute is written in the disjunctive, and DCS must prove either by clear and convincing evidence. Ind. Code § 31-35-2-4. Because the evidence supports the conclusion there was a reasonable probability that the conditions leading to Children's removal would not be remedied, we need not address whether the continuation of the parent-child relationship posed a threat to Children's well-being.

[4] The trial court entered a separate order for each child; however, the findings were virtually identical and thus we quote only the order concerning D.G.

5.  A requirement of the IA was to discontinue use of illegal substances;

6.  Mother was offered home based casework, counseling, a substance abuse assessment, and random drug screens throughout the IA;

7.  Mother continued to test positive for illegal substances throughout the IA;

\* \* \* \* \*

9.  Mother tested positive for cocaine after a drug screen on March 27, 2014;

\* \* \* \* \*

18.  During the CHINS proceeding,

    a.  Mother was ordered to participate in a substance abuse assessment and a psychological evaluation;

    b.  Mother completed a substance abuse assessment on March 9, 2015.  The assessment recommended that Mother participate in Intensive Outpatient Treatment (IOP);

    c.  Mother never followed through with the continued substance abuse treatment recommended in the assessment.  Mother was to begin IOP on March 10, 2015 and failed to begin.

\* \* \* \* \*

21. Mother has failed to complete a drug treatment program;

22. In the last right [sic] (8) months, Mother has been charged five (5) times with new criminal charges relating to substance abuse[.]

(App. at 16, 17, 20, 23.)

In addition, failure to visit one's children "demonstrates a lack of commitment to complete the actions necessary to preserve the parent-child relationship." *In re A.L.H.*, 774 N.E.2d 896, 900 (Ind. Ct. App. 2002). The trial court found Mother was ordered to participate in supervised visitation with Children, but:

h. Mother often appeared late for visits and was inappropriate when the visits were held at the placement's[5] home. Mother argued with the placement in front of the Child[ren] during visitation;

i. Mother came to visits under the influence of alcohol or drugs;

j. Visitation was suspended by order of the Court effective October 31, 2014 and a hearing was set;

k. The Court ordered Mother on January 26, 2015 to participate in a substance abuse assessment and a psychological evaluation and comply with all recommendations of that assessment, comply with all drug screen requests, demonstrate a minimum period of sixty (60) days of strict compliance with the Court's

---

[5] "The placement" appears to be a reference to the Children's respective paternal grandparents, with whom the Children were placed after they were removed from Mother's care.

> terms, both as to attending screens and having those screens
> return with negative results prior to visitation being reinitiated
> with the Child[ren].

(App. at 21) (footnote added). Mother's last visit with Children was October 24, 2014.

[15] Mother argues DCS did not present sufficient evidence the conditions under which Children were removed would not be remedied because "Mother had been clean and sober for two months at the time of the termination hearing in October 2015." (Br. of Appellant at 15.) However, Mother was incarcerated for the time prior to the October 2015 hearing; thus it would seem her access to illegal substances was momentarily curtailed. Her temporary sobriety does not require us to overlook her conduct throughout the proceedings. *See In re K.T.K.*, 989 N.E.2d 1225, 1234 (Ind. 2013) (trial court is within its discretion to "disregard the efforts Mother made only shortly before termination and to weigh more heavily Mother's history of conduct prior to those efforts"); *and see Prince v. Allen County DCS*, 861 N.E.2d 1223, 1230-31 (Ind. Ct. App. 2007) (termination of parental rights appropriate when mother "has not demonstrated she will remain sober without the constant threat of imprisonment"). Mother's argument is an invitation for us to reweigh the evidence, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

### Children's Best Interests

[16] In determining what is in the children's best interests, the juvenile court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010), *trans. dismissed*. A parent's historical inability to provide a suitable environment along with the parent's current inability to do so supports finding termination of parental rights is in the best interests of the child. *In re A.L.H.*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002). The recommendations of a DCS case manager and court-appointed advocate to terminate parental rights, in addition to evidence that conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the children's best interests. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009).

[17] In addition to the trial court's findings regarding Mother's substance abuse and lack of visitation with Children, DCS presented testimony from the Guardian *ad litem*, who had concerns about Mother's mental health based on Mother's "erratic behavior" during conversations with her. (App. at 23.) At the time of the termination hearing, Mother was incarcerated and was not employed. Finally, the trial court found the Children were doing well in their current placement with their paternal grandparents, with whom they had lived since September 29, 2014.

[18] Mother argues termination was not in the best interests of the Children because she was working towards reunification with Children by participating in services while she was incarcerated. Mother testified she had been accepted into Drug Court, which would allow her to participate in substance abuse

services in an effort to avoid further jail time. Finally, Mother contends Children were young and thus additional time in relative care would not adversely affect them.

[19] In support of her argument, Mother cites *In Re G.Y.,* 904 N.E.2d 1257, 1265 (Ind. 2009), *reh'g denied*, where termination was not in the best interests of G.Y. because his mother, who was incarcerated for a crime committed prior to G.Y.'s conception, had completed services and maintained contact with G.Y. while she was incarcerated. In addition, her release from incarceration was imminent.

[20] Such is not the case here. Mother was arrested multiple times during the CHINS and TPR proceedings, had consistently tested positive for illegal substances, had not completed services, and had not visited with Children for approximately a year before her parental rights were terminated. Mother's arguments are invitations for us to reweigh the evidence, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

# Conclusion

[21] DCS provided sufficient evidence the circumstances under which Children were removed from Mother's home would not be remedied and termination was in Children's best interests. Accordingly, we affirm the termination of Mother's parental rights to Children.

Affirmed.

Baker, J., and Brown, J., concur.